718 So.2d 269 (1998)
STATE of Florida, Appellant,
v.
Scott NASH, Appellee.
No. 97-1181.
District Court of Appeal of Florida, Fifth District.
September 4, 1998.
Robert A. Butterworth, Attorney General, Tallahassee, and Carmen F. Corrente, Assistant Attorney General, Daytona Beach, for Appellant.
No Appearance for Appellee.
THOMPSON, Judge.
The state appeals an order suppressing statements made by Scott Nash during the investigation of a murder that had taken place at a baseball field. We affirm in part and reverse in part.
Testimony at the suppression hearing showed that Nash agreed to accompany police to the station for an interview. The police read Nash his Miranda[1] rights, and Nash eventually invoked his right to have an attorney present, at which point the police ceased questioning Nash. Nash also asked to speak to his roommate, who was contacted by the police and agreed to speak to Nash at the station. According to the roommate, his main objective was to "minister" to Nash. However, the roommate testified that he asked Nash about events that occurred the preceding night mainly because an officer asked him to do the police a favor and find out what had happened.
Nash emerged from his discussion with the roommate to ask an officer for a cigarette. He told the officer that he was not finished speaking to the roommate, but that he would like to speak to the officer when the discussion concluded. The officer replied, "[W]ell, you asked for an attorney, but that's up to you." According to the officer, when Nash concluded his discussion with the roommate, Nash "once again reinitiated that he did want to speak with me." Back in the interview room, the officer reminded Nash that he had asked for an attorney, and Nash "advised that was true and now he's recanting that wish and wishing to speak with me." The ensuing interview continued at the baseball field, Nash having stated that he would help the police locate a knife. At the baseball field, the officer read the Miranda rights to Nash.
In addition to secretly recording the conversation between the roommate and Nash, the police questioned the roommate about the conversation. However, the trial court ruled that the statements made by Nash to his roommate were inadmissable. The court found that the roommate was an agent of the police in procuring the statements. The procurement of the statements, the court held, violated Edwards v. Arizona, 452 U.S. 973, 101 S.Ct. 3128, 69 L.Ed.2d 984 (1981), which held that once a defendant invokes his right to the presence of an attorney he is not subject to further interrogation until counsel *270 has been made available to him, unless the defendant himself initiates further communications with the police. Statements obtained in violation of this rule are inadmissible because they are obtained in violation of the Fifth and Fourteenth Amendments to the United States Constitution. See id. The state does not contest this ruling.
The court also suppressed all subsequent statements made by Nash on the ground that they were the "fruit of the poisonous tree." The state contests this ruling insofar as it pertains to the statements Nash made after receiving his Miranda rights at the baseball field. Confining our discussion to these statements, we agree that the court erred. In Oregon v. Elstad, 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985), the Supreme Court explained that the concepts of the "fruit of the poisonous tree" and the "cat is out of the bag" do not apply to technical violations of the Miranda rule.
The Court stated:
If errors are made by law enforcement officers in administering the prophylactic Miranda procedures, they should not breed the same irremediable consequences as police infringement of the Fifth Amendment itself. It is an unwarranted extension of Miranda to hold that a simple failure to administer the warnings, unaccompanied by any actual coercion or other circumstances calculated to undermine the suspect's ability to exercise his free will, so taints the investigatory process that a subsequent voluntary and informed waiver is ineffective for some indeterminate period. Though Miranda requires that the unwarned admission must be suppressed, the admissibility of any subsequent statement should turn in these circumstances solely on whether it is knowingly and voluntarily made.
* * * * * *
A subsequent administration of Miranda warnings to a suspect who has given a voluntary but unwarned statement ordinarily should suffice to remove the conditions that precluded admission of the earlier statement. In such circumstances, the finder of fact may reasonably conclude that the suspect made a rational and intelligent choice whether to waive or invoke his rights.
Id. at 309-314, 105 S.Ct. 1285. See also Davis v. State, 698 So.2d 1182 (Fla.1997), cert. denied, ___ U.S. ___, 118 S.Ct. 1076, ___ L.Ed.2d ___ (1998).
Elstad controls this case because this case involves a technical violation of Miranda and Edwards. See Connecticut v. Barrett, 479 U.S. 523, 528, 107 S.Ct. 828, 93 L.Ed.2d 920 (1987) (prohibition by Miranda and Edwards of further questioning after invocation of right to attorney is not itself required by Constitution, but is instead justified only by reference to its prophylactic purpose). Here, the trial court held that use of the roommate by the police to question Nash was a violation of Edwards and Miranda. However, Nash later asked to speak to the officer, who reminded Nash that he had invoked his right to counsel. At the baseball field, the officer again gave Nash the Miranda warning. Because there is no suggestion in the record that any statement by Nash was involuntary, the statements made at the baseball field are admissible. The new set of Miranda warnings "remove[ed] the conditions that precluded admission of the earlier statement," Elstad, 470 U.S. at 314, 105 S.Ct. 1285.
Accordingly, we hold that the statements made by Nash after he was read his Miranda rights at the baseball field are admissible.
REVERSED IN PART and REMANDED.
GOSHORN and PETERSON, JJ., concur.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).